## STATE v. LEE N. HOUSTON.[1]

May 29, 1941.

No. 32,810.

*George A. French,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the State.

GALLAGHER, CHIEF JUSTICE.

This appeal is from a municipal court judgment convicting defendant of violating an ordinance of the city of Minneapolis "relating to the purchase and sale of eggs."

Section 14 of the ordinance purports to establish grades for the retail trade of eggs in Minneapolis. The grades so established are Grade "A," Grade "A" Medium or Small, and Grade "B." All eggs that are not graded must be marked "unclassified." Nothing in the ordinance makes grading compulsory. The quality factors

[1]Reported in 298 N. W. 358.

for each grade are specified in the ordinance. For example, the quality factors for Grade "A" eggs are:

"Min. aver. 24 oz. per doz. per case. Min. rate 23 oz. for individual egg. Case 46 lbs. net. *Shell:* Clean, sound, normal. *Air Cell:* 2-8 in. or less, localized-regular. *Yolk:* Well centered; may be visible with outline moderately defined; may be slightly mobile. *White:* Firm, clear. *Germ:* No visible development."

Lesser standards are required for the other grades.

Defendant was charged with selling a quantity of eggs as Grade "A," some of which were in fact Grade "B" and undergrade eggs. Section 6 requires any person exposing or offering eggs for sale to a consumer to give notice of the exact grade in the manner specified in the ordinance. Sections 11 and 12 make it unlawful to sell eggs which do not conform to the grade represented by the dealer.

It is urged on this appeal that the ordinance here involved is void for three reasons: (1) The city lacked the power to pass it; (2) if the city ever possessed such power it was taken away by the enactment of L. 1937, c. 471 (3 Mason Minn. St. 1940 Supp. §§ 3935-11 to 3935-19); and (3) the ordinance is unnecessary to the regulation of the subject matter and is so unreasonable as to be an arbitrary exercise of power.

■ Defendant's contention that the city lacked the power to pass the ordinance is without merit. The necessary authority is found in several provisions of the city charter. Chapter IV, § 5, known as the general welfare clause, provides:

"The City Council shall have full power and authority to make, ordain, publish, enforce, alter, amend or repeal all such ordinances for the government and good order of the city * * * as it shall deem expedient * * * Provided, that they be not repugnant to the laws of the United States or of this State, and for these purposes the said City Council shall have authority by such ordinances:

* * * * *

"Nineteenth.—To license and regulate butchers' stalls, shops, and stands, for the sale of game, poultry, butchers' meat, butter, fish, and other provisions, and also to license and regulate all peddlers doing business within said city.

\* \* \* \* \*

"Twenty-fifth.—To regulate the inspection of wood, hay, grain, flour, pork, beef, mutton, veal, and all other kinds of meat, poultry and game, fish, salt, whiskey and other liquors and provisions and milk; \* \* \*

\* \* \* \* \*

"Twenty-ninth.—To do any and all acts and make all regulations which may be necessary and expedient for the preservation of health and the suppression of disease, and to make regulations to prevent the introduction of contagious, infectious or other diseases into the city, and to make quarantine laws and enforce the same within the city."

The general welfare clause of the city charter, which amounts to a grant of all usual and necessary powers, does not limit a city to the doing of the things enumerated therein but authorizes the licensing and regulating of businesses not specifically referred to in the charter. State v. Sugarman, 126 Minn. 477, 148 N. W. 466, 52 L.R.A.(N.S.) 999; Meyers v. City of Minneapolis, 154 Minn. 238, 189 N. W. 709, 191 N. W. 609; City of St. Paul v. Fielding & Shepley, Inc. 155 Minn. 471, 194 N. W. 18; State v. Morrow, 175 Minn. 386, 221 N. W. 423; Crescent Oil Co. v. City of Minneapolis, 175 Minn. 276, 221 N. W. 6; State ex rel. Remick v. Clousing, 205 Minn. 296, 285 N. W. 711, 123 A. L. R. 465. The power to establish and regulate markets is an appropriate subject for municipal regulation. 28 Cyc. 930(3). Regardless of whether the ordinance here involved is authorized by the general welfare clause of the charter, it is clear that it is authorized by the subsections of chapter IV, § 5, heretofore quoted. While the word "eggs" is not specifically mentioned in any of the subsections, the word "provisions" is used, and eggs are provisions as that term is commonly

understood. Weiss v. Swift & Co. 36 Pa. Sup. 376, 381. Webster's New International Dictionary (2 ed.) 1935, defines "provisions": "A store or stock of needed materials prepared beforehand; esp., a stock of food; hence, any kind of eatables collected or stored; food." A statute regulating the sale of eggs was held not to violate constitutional rights in People v. Wilson & Co. Inc. 138 Misc. 440, 246 N. Y. S. 111.

■ The next claim made by defendant is that if the city possessed the power to legislate on the subject matter here involved prior to the enactment of L. 1937, c. 471, such power was taken away by the passage of that act. L. 1937, c. 471, is entitled: "An act relating to the grading, candling, purchase and sale of eggs and egg products, and providing for the regulation of the business of breaking eggs for resale; providing for the procurement of a license to conduct such business; providing for the establishment of rules and regulations to carry out the purposes of this act; and providing penalties for violations hereof." Section 6 vests in the department of agriculture, dairy and foods, the power and authority "to supervise, regulate and make reasonable rules and regulations not inconsistent with the law, relative to grading, candling, breaking, purchasing and selling of eggs and egg products for the purpose of preserving and protecting the public health."

There is no express provision in L. 1937, c. 471, prohibiting any municipality from legislating on the same subject matter, nor do we find anything in the act from which such prohibition might be implied. By virtue of the authority granted by the law, the department of agriculture promulgated certain rules and regulations regarding the grading and selling of eggs. It is conceded that the regulations so promulgated are substantially the same as those contained in the city ordinance.

A municipality, if it has proper delegated authority and if it legislates consistently with state law, may make an act an offense against the municipality although it is by statute an offense against the state. State v. Lindquist, 77 Minn. 540, 80 N. W. 701;

City of Jordan v. Nicolin, 84 Minn. 367, 87 N. W. 916; State v. Marciniak, 97 Minn. 355, 105 N. W. 965; City of Virginia v. Erickson, 141 Minn. 21, 26, 168 N. W. 821; City of Duluth v. Evans, 158 Minn. 450, 452, 197 N. W. 737. Such an ordinance does not punish the violation of the state law but establishes a local law, the infraction of which it punishes. This court in City of Duluth v. Evans, *supra*, said:

"Ordinances may be valid when they relate to the same matter as a state law, even though the punishment prescribed in both be not the same. State v. Harris, 50 Minn. 128, 52 N. W. 387, 531. Even if the penalty be less, the ordinance may be, and doubtless is, an important adjunct in preserving the standard of regulation as moulded by the general law."

We hold that the ordinance under consideration does not conflict with the state law, is not an infringement thereof, and that L. 1937, c. 471, does not take from the city council the power to pass the ordinance.

■ Defendant's final claim is that the ordinance is unnecessary to the regulation of the subject matter and is so unreasonable as to be an arbitrary exercise of power and void. Where the power to legislate upon a given subject is granted, as it is here, and the mode of its exercise and the details of such legislation is not prescribed, an ordinance passed pursuant thereto must be a reasonable exercise of the power or it will be pronounced invalid. 28 Cyc. 370 (a). A court will exercise judicial scrutiny over the details of an ordinance. Evison v. C. St. P. M. & O. Ry. Co. 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434. But the power of the court to declare an ordinance invalid because it is unreasonable must be exercised carefully. When an ordinance is within the grant of the power conferred upon a municipality, the presumption is that it is reasonable, unless the unreasonable character appears upon its face. 2 Dillon, Mun. Corp. (5 ed.) p. 928, § 591. Courts have no power to declare an ordinance void as being unreasonable unless the unreasonableness is so clear, manifest, and undoubted

as to amount to a mere arbitrary exercise of the power vested in the legislative body. State v. Barge, 82 Minn. 256, 84 N. W. 911, 1116, 53 L. R. A. 428; Knobloch v. C. M. & St. P. Ry. Co. 31 Minn. 402, 18 N. W. 106. We do not so consider this ordinance.

The judgment appealed from is affirmed.